UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

GLENN LOUGEE,                                                    Civil No. 05-2309 (JRT/FLN)

                Plaintiff,

v.

JO ANNE B. BARNHART,                                       **REPORT AND RECOMMENDATION**
Commissioner of Social Security,

                Defendant.

_____

Jenniffer Mrozik, Esq., for Plaintiff.
Lonnie F. Bryan, Assistant United States Attorney, for the Government.

_____

Plaintiff Glenn Lougee seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner"), who denied his application for disability insurance benefits ("DIB"). See 42 U.S.C. § 1382 (c). This Court has appellate jurisdiction over the claim pursuant to 42 U.S.C. §§ 405 (g). The matter was referred to the undersigned United States Magistrate Judge for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1(c). The parties have submitted cross-motions for summary judgment [#14 and #19]. For the reasons set forth below, it is the Court's recommendation that the Commissioner's decision be affirmed.

## I. INTRODUCTION

Plaintiff applied for DIB on July 18, 2003, alleging he became disabled on May 12, 2003. (Tr. 67.) His alleged impairments are mild degenerative disc disease of the cervical and lumbar spines, major depressive disorder, recurrent, generalized anxiety disorder, alcohol-induced hypertension, and alcohol dependence. (Tr. 27-28.) The Social Security Administration denied the application initially and upon reconsideration. (Tr. 44-46, 49-50.) Plaintiff filed a timely request

for a hearing, which was held before Administrative Law Judge ("ALJ") Leonard Nelson on October 4, 2004. (Tr. 51, 270-319.) Plaintiff was represented by council and testified on his own behalf. (Tr. 272-307.) A medical expert, Dr. Mary Louise Stevens, and a vocational expert ("VE"), Kenneth Ogren, also testified. (Tr. 307-318.) The ALJ determined that Plaintiff's residual functional capacity ("RFC"), prevented him from performing his past relevant work, but concluded the Claimaint could perform a significant number of jobs in the national economy independent of alcohol dependency. (Tr. 35-36.) The ALJ rendered an unfavorable decision dated January 12, 2005. (Tr. 23-36.) Plaintiff appealed that unfavorable decision to the Appeals Council, and the Appeals Council denied review on July 28, 2005, making the decision of the ALJ the final decision of the Commissioner. (Tr. 7-9.)

Plaintiff initiated this action in federal court seeking judicial review on September 30, 2005. (Docket #1.) He moved for summary judgment March 3, 2006. (Docket #14.) Plaintiff raises three issues in his motion: (1) Whether the ALJ followed proper principles of law in determining the materiality of Plaintiff's chemical dependency; (2) whether the ALJ properly weighed the opinions of treating and examining physicians and improperly substituted his own lay opinions; and (3) whether the ALJ properly analyzed Plaintiff's credibility. The Commissioner filed her motion for summary judgment on April 10, 2006. (Docket # 19.) Although we agree with Plaintiff that the ALJ used an improper process to consider the impact of alcohol dependency, we conclude that the error is harmless and affirm the decision of the ALJ as supported by substantial evidence on the record as a whole.

## II.  STATEMENT OF FACTS

**A.     Background**

Plaintiff was born on October 19, 1955, and was forty nine years old at the time of the ALJ's decision. Plaintiff has spent all of his life working in the mining industry as a general laborer, truck driver, crusher, filter attendant, burner attendant, and janitor. (Tr. 88, 111-116, 153, 154D.) He has completed his GED and has no further education.[1]  (Tr. 93.)

**B.     Medical Evidence**

Plaintiff claims both mental and physical impairments, however, his mental impairments have predominated in the previous proceedings on this matter.  Plaintiff's relevant impairments are mild degenerative disc disease of the cervical and lumbar spines, major depressive disorder, recurrent, generalized anxiety disorder, alcohol-induced hypertension, and alcohol dependence. (Tr. 27-28.)

Plaintiff had been under the care of the doctors at the Hibbing Family Medical Center since June 18, 2001.  (Tr. 247.)  During his initial evaluation, Plaintiff received an initial diagnosis of hypertension, alcoholism, chronic depression, and gastritis.  (Tr. 247.)  Between his initial visit to HFMC and his date of disability onset, May 12, 2003, doctors at HFMC regularly treated Plaintiff for anxiety in addition to the initially diagnosed conditions.  (Tr. 228-47.)  During that time, he also received treatment for abdominal pain, neck pain, back pain and conjunctivitis.  (Tr. 230, 236.)  Nearly every evaluation from a treating physician included a reference to the harmful effects of Plaintiff's alcohol use.  (Tr. 228-47.)

After his date of disability, May 12, 2003, Plaintiff received treatment from Dr. Cardwell at

---

[1] In his findings, the ALJ describes Plaintiff as having a post-secondary education, but this does not appear to be supported by the record. (Tr. 35, 93). Additionally, it does not appear that the ALJ considered a post-secondary education in determining Plaintiff's ability to work.

3

HFMC.  On May 19, 2003, Dr. Cardwell treated Plaintiff for chronic anxiety and substance abuse.  (Tr. 228.)  Plaintiff and Dr. Cardwell discussed the impacts of these impairments upon his work performance.  Dr. Cardwell decided that Plaintiff should use fours week of FMLA leave to evaluate the impact of anxiety and substance abuse upon his work performance. (Tr. 228.)  On June 13, 2003, Dr. Cardwell followed up with  Plaintiff.  He noted increased problems with chemical dependency and anxiety. (Tr. 227.)  Dr. Cardwell directed Plaintiff to seek the care and advice of a  psychiatrist. (Tr. 227.)  Claimaint attended monthly follow up appointments with Dr. Cardwell, where Dr. Cardwell found no physical conditions that would make Claimaint eligible for disability and continually referred Claimaint to a psychiatrist. (Tr. 223-26.)  On January 13, 2004, Dr. Cardwell noted, "the biggest problem Mr. Lougee has is that he is a chronic alcoholic and completely non-compliant with his medicines or with any of his other medical care." (Tr. 223.) The evidence indicates that Plaintiff never followed up on Dr. Cardwell's referral to a psychiatrist. (Tr. 254.)

At the request of the Disability Determination Services of the Minnesota Department of Economic Security, Plaintiff had a physical consultative examination and a psychological consultative examination. (Tr. 198-207) Both examinations took place on October 24, 2003.  The physical examination concluded that Plaintiff had alcoholism, depression, hypertensive cardiovascular disease, and no evidence of lumbar spine disease. (Tr. 200.)  The findings also indicated that Plaintiff retained full physical functional capacity with the exception that his ability to work around heights and/or dangerous machinery may be limited by his drinking. (Tr. 200.)  The psychological evaluation concluded that Plaintiff had alcohol dependence, recurrent major depressive disorder, and generalized anxiety disorder. (Tr. 206)  The findings also indicated that

Plaintiff's ability to sustain attention, concentrate, carry out work-like tasks, and tolerate stress is poor. (Tr. 207.) The psychologist noted insufficient "information to determine how much of [Plaintiff's] problematic behavior is driven by his alcohol abuse in contrast to a primary personality disorder." (Tr. 206.)

The Social Security Administration ordered a medical consultant review. (Tr. 221.) The review determined that Plaintiff warrants an assessment of his residual functional capacity. (Tr. 208.) The examining psychologist based this determination upon Plaintiff's affective disorders under 12.04, anxiety related disorders under 12.06, and substance addiction disorders under 12.09. (Tr. 208.) The examiner determined that Plaintiff had a moderate degree of limitation in activities of daily living, maintaining social functioning, and maintaining concentration. (Tr. 218.) Overall, the findings indicated that Plaintiff did have a severe impairment, but not an impairment which meets or exceeds a listing under Appendix 1, Subpart P, Regulation No. 4. (Tr. 220.)

The evaluation of Plaintiff's mental residual functional capacity was determined with the assumption that Plaintiff both maintained sobriety and failed to maintain sobriety. (Tr. 258-66.) With sobriety maintained, Plaintiff retains the capacity to accomplish routine, repetitive tasks, but would have marked difficulties completing detailed or complex tasks. (Tr. 266.) Additionally, his ability to interact with others would be adequate for brief and superficial contact. (Tr. 266.) If Plaintiff failed to maintain sobriety, his ability to persist at an adequate pace would be markedly impaired and not sufficient to meet the production standards of a routine work setting. (Tr. 266.)

**C.     Plaintiff's Testimony**

Attorney Jennifer Mrozik represented Plaintiff at the hearing before the Administrative Law Judge. Plaintiff testified that he lives alone in Keewatin, Minnesota. Tr. 274. He takes care of his

home by himself, but frequently falls behind on completing household chores. (Tr. 277, 295.) He does not like grocery shopping or driving. (Tr. 295.) He occasionally does yard work, but will also hire out tasks like cutting the lawn. (Tr. 283.) He is able to bathe, dress and feed himself, but he frequently falls behind on these tasks. (Tr. 283, 295-96.) He described not sleeping well and a poor appetite. (Tr. 277, 290, 296.)

In reference to alcohol use, Plaintiff testified that he drinks a half-quart of whiskey three times a week. (Tr. 281.) He had been sober for ten years during which he attended in excess of "3,000 meetings plus, easy." (Tr. 279.) He testified that his sobriety ended in 1996. (Tr. 304.) He testified that his drinking is an attempt to self-medicate. (Tr. 296.) In addition to consuming alcohol, Plaintiff smokes about two packs of cigarettes per day. (Tr. 283.)

Plaintiff testified that his last employment was janitorial in nature. (Tr. 284.) This employment ended in May of 2003. (Tr. 284.) He testified that he lost his job because of an ownership change in the company while he was on sick leave and the new ownership did not like people on sick leave. (Tr. 302.) Plaintiff testified that, during his period of sobriety, he held jobs of increasing importance for National Steel. (Tr. 304.) During the end of that period, he began to take on jobs of a supervisory nature. (Tr. 304-05.)

He testified that he is currently unemployed because he does not believe that he can work due to both physical and mental problems. (Tr. 284-85.) Plaintiff testified to being limited to walking six blocks and standing ten minutes. (Tr. 286.) He testified that he has no difficulty sitting and can do so for extended periods of time. (Tr. 286.) He testified that he has the ability to lift 50 pounds. (Tr. 287.)

Plaintiff testified that he can keep his mind on what he is doing about fifty percent of the

6

time. (Tr. 287.) He gets panic attacks where he gets so hyper that he is unable to talk. (Tr. 290.) He described being unable to calm himself down. (Tr. 290.) These attacks impact his ability to concentrate. (Tr. 291.)

Plaintiff testified that he is on medication for his blood pressure, seizures, and depression. (Tr. 292.) He believes that his medication caused dizziness and pain throughout his body. (Tr. 293.) He has since cut back his medication and received some relief of his pain. (Tr. 293.)

Plaintiff testified that his daily activities are essentially limited to watching TV and drinking alcohol. (Tr. 280-81.) His social interaction is limited to going to the bar about twice a week. (Tr. 280.) He testified that he attempted to get out and walk, but that he was unable due to pain in his feet and buttocks. (Tr. 282.)

Plaintiff testified that he has not visited with a treating mental health care provider since his date of disability. (Tr. 277.)

### D.     Medical Expert's Testimony

The medical expert testified that Plaintiff had diagnoses under the medical listings of 12.04 depression, 12.06 generalized anxiety, and 12.09 alcohol dependence. (Tr. 307.) The medical expert testified that she believed the diagnoses were primarily based upon Plaintiff's alcohol use. (Tr. 308.) She based that opinion by comparing his current condition to his condition during his period of sobriety. (Tr. 308.) She also considered the ability of alcohol abuse to cause depression and anxiety. (Tr. 308.) She testified that Plaintiff would be capable of simple, repetitive work duties with brief, superficial contact with others in an environment free of controlled substances. (Tr. 310.) She qualified her statement by noting the difficulty in making an assessment free of alcohol abuse. (Tr. 309.)

### E.     Vocational Expert's testimony

The vocational expert testified that Plaintiff could not return to his past relevant work because he had been engaged in semi-skilled work, but was only capable of unskilled work at that point in time. (Tr. 316.) The ALJ inquired about the availability of work for a person of Plaintiff's age, education, and experience with depression, anxiety, a sore back and high blood pressure and ability to lift 50 pounds, stand for six out of eight hours, and sit for six out of eight hours. (Tr. 316-17.) The vocational expert testified that employment in both the light and sedentary fields existed for such a hypothetical person. (Tr. 317-18.) This work included bench grinders, bench hand, inspector, polisher, and jacket preparer. (Tr. 317-18.) Plaintiff's counsel posited a hypothetical person with the ability of Plaintiff, when not sober, and the vocational expert found such a hypothetical person unemployable. (Tr. 207, 318.)

### F.     The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ followed the five-step sequential process outlined at 20 C.F.R § 404.1520. (Tr. 27.) In the first step of the analysis, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of his disability. (Tr. 27.) The next step in the sequential evaluation is to determine whether or not Plaintiff had a severe impairment, defined as an impairment that significantly limits the individual's physical or mental ability to meet the basic demands of work activity. (Tr. 27.) The ALJ found that Plaintiff was severely impaired by mild degenerative disc disease of the cervical and lumbar spines, major depressive disorder, recurrent, generalized anxiety disorder, alcohol induced hypertension, and alcohol dependence. (Tr. 27-28.) The regulations next require a comparison of the claimant's severe impairment with the impairments listed in Appendix 1, Subpart P, Regulations No. 4, Listing

of Impairments. Based on a review of the evidence and the testimony of Dr. Stevens, the neutral medical expert, the ALJ concluded that Plaintiff did have an impairment or combination of impairments that met or equaled the criteria in listing 12.09 due to alcohol dependence. The ALJ noted that alcohol dependency cannot be the basis for a finding of disability and concluded that independent of alcohol dependency, Plaintiff did not have an impairment or combination of impairments that met or equaled the criteria of any listed impairment. (Tr. 28.) The ALJ continued the five-step sequential process to determine whether Plaintiff was disabled independent of alcohol dependency. (Tr. 28.)

The last two steps in the evaluation require the ALJ to determine whether the claimant has the residual functional capacity (RFC) to perform his past relevant work, or lastly, any other work existing in significant numbers in the national economy. In determining Plaintiff's residual functional capacity, the ALJ considered the medical record, the vocational expert's testimony, Plaintiff's testimony, and the credibility of Plaintiff's subjective complaints in accordance with 20 C.F.R. § 404.1529 and Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984). The ALJ noted the medical evidence and medical records from treating physicians Dr. Jean Van Pelt, Dr. Jack Green, and Dr. Mitchell Cardwell. (Tr. 28-32.) The ALJ also considered the consultative examinations by Dr. Richard Moyer and James Huber Ph.D., L.P. (Tr. 32-33.) The ALJ did not place significant weight on the opinion of Dr. Huber because his opinion included Plaintiff's alcohol dependency. (Tr. 33-34.) Based on this evidence, the ALJ determined that Plaintiff had the RFC to: lift and carry up to 50 pounds occasionally and 25 pounds frequently; stand and or walk for six hours of an eight hour day; sit for six hours of an eight hour day; engage in simple repetitive work; maintain brief and superficial contacts in an environment free of controlled substances (Tr. 33.) With this RFC and

the testimony of the neutral vocational expert, the ALJ concluded that Plaintiff could not perform his past relevant work. (Tr. 34.) The vocational expert testified that Plaintiff was capable of jobs such as bench grinder, bench handler, and washing machine operator, which exist within the regional economy. (Tr. 34.) Therefore the ALJ concluded that Plaintiff did not meet the relevant statutory criteria for a finding of disability at any time relevant to the adjudication. (Tr. 35.)

In specifically addressing Plaintiff's alcohol dependency, the ALJ found no evidence of disability independent of alcohol dependency. (Tr. 35.) The ALJ noted the repeated advice by medical providers to seek chemical dependency treatment and the lack of any action by Plaintiff. (Tr. 34.) The ALJ also noted that Plaintiff was able to maintain employment during his period of sobriety and medical treatment coincided with periods of heavy alcohol use. (Tr. 34-35.) The ALJ determined that alcohol dependence is a contributing factor to a determination of Plaintiff's disability. (Tr. 36.)

### III.  STANDARD OF REVIEW

Judicial review of the final decision of the Commissioner is restricted to a determination of whether the decision is supported by substantial evidence on the record as a whole. See 42 U.S.C. § 405(g); see also Qualls v. Apfel, 158 F.3d 425, 427 (8th Cir.1998); Gallus v. Callahan, 117 F.3d 1061, 1063 (8th Cir.1997); Wilson v. Sullivan, 886 F.2d 172, 175 (8th Cir.1989). Substantial evidence means more than a mere scintilla; it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." See Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co., v. NLRB, 305 U.S. 197, 220 (1938)). In determining whether evidence is substantial, a court must also consider whatever is in the record that fairly detracts from its weight. See Warburton v. Apfel, 188 F.3d 1047, 1050 (8th Cir.1999); see also

Cruse v. Bowen, 867 F.2d 1183, 1184 (8th Cir.1989) (citing Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1951)).

A court, however, may not reverse merely because substantial evidence would have supported an opposite decision. See Roberts v. Apfel, 222 F.3d 466, 468 (8th Cir.2000); see also Gaddis v. Chater, 76 F.3d 893, 895 (8th Cir.1996). "As long as substantial evidence in the record supports the Commissioner's decision, we may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome . . . or because we would have decided the case differently." Roberts v. Apfel, 22 F.3d at 468. (citing Craig v. Apfel, 212 F.3d 433, 436 (8th Cir.2000); Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir.1993)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Id. Therefore, our review of the ALJ's factual determinations is deferential, and we neither re-weigh the evidence, nor review the factual record de novo. See Flynn v. Chater, 107 F.3d 617, 620 (8th Cir.1997); Roe v. Chater, 92 F.3d 672, 675 (8th Cir.1996). The Court must "defer heavily to the findings and conclusions of the SSA." Howard v. Massanari, 255 F.3d 577, 581 (8th Cir.2001).

Disability is defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). In making the disability determination the Secretary promulgated a sequential evaluation process which applies to both physical and mental disorders. 20 C.F.R. §404.1520 outlines the five-step sequential process used by the ALJ to determine whether a claimant is disabled. The disability determination requires a step-by-step analysis. See 20 C.F.R. §404.1520(a).

At the first step, the ALJ must consider Plaintiff's work history. At the second step, the ALJ must consider the medical severity of Plaintiff's impairments. At the third step, the ALJ must consider whether Plaintiff has an impairment or impairments that meet or equals one of the listings in Appendix 1 to Subpart P of the regulations. See 20 C.F.R. 404.1520(d). If Plaintiff's impairment does not meet or equal one of the listings in Appendix 1, then the ALJ must make an assessment of Plaintiff's residual functional capacity and Plaintiff's past relevant work. If the ALJ determines that the claimant can still perform his or her past relevant work, the ALJ will find that the claimant is not disabled. If the claimant cannot perform his or her past relevant work, then the "burden shifts to the Commissioner to prove, first, that the claimant retains the [RFC] to perform other kinds of work, and, second, that other such work exists in substantial numbers in the national economy." Cunningham v. Apfel, 222 F.3d 496, 501 (8th Cir.2000).

## IV.  CONCLUSIONS OF LAW

The three issues that Claimaint brings this appeal upon are: (1) whether the ALJ followed proper principles of law in determining the materiality of Plaintiff's chemical dependency; (2) whether the ALJ properly weighed the opinions of treating and examining physicians and improperly substituted his own lay opinions; and (3) whether the ALJ properly analyzed Plaintiff's credibility. The ALJ improperly considered the Plaintiff's claim, however, this error was harmless and his determination is supported by substantial evidence on the record as a whole.

> **A.    The ALJ did not follow proper principles of law in determining the materiality of Plaintiff's chemical dependency, however this error was harmless.**.

"If alcohol or drug abuse comprises a contributing factor material to the determination of disability, the claimaint's application must be denied." Brueggemann v. Barnhart, 348 F.3d 689,

693 (8th Cir. 2003)(citing 42 U.S.C. § 423(d)(2)(C); 20 C.F.R. § 404.1535). The regulations require the ALJ to first conduct the five-step sequential process without segregating out any effects of chemical dependency. Brueggemann, 348 F.3d at 694. If the claimaint's limitations meet the requirements of a disability, then the ALJ must determine what limitations would remain in the absence of alcohol use. Id. After factoring out the limitations due to alcohol use, the ALJ considers the remaining limitations and considers whether they would lead to a finding of disability. Id. at 695. If the ALJ cannot separate the alcohol related limitations from the non-alcohol related limitations, then the award of benefits should follow. Id.

Plaintiff argues that the ALJ failed to follow the process described in the regulations and applied in Brueggemann. The undersigned agrees that the ALJ failed to fully engage in the appropriate process for determining the materiality of alcohol dependence. The ALJ did not format his decision and reasoning to match the form set forth in Brueggemann. The ALJ moved immediately to considering the effects of alcohol after determining that Plaintiff would be disabled at step three of the sequential process under Listing 12.09. The ALJ should have fully developed limitations with Plaintiff's alcohol dependency. Additionally, the ALJ should have made specific findings describing how the limitations due to alcohol dependency were factored out.

In Brueggemann, the Eighth Circuit declined to find the ALJ's error harmless and remanded the case because the ALJ's abbreviated decision led to an insufficient record on the issue of alcohol dependency. Brueggemann, 348 F.3d at 695-96. However, in the case at hand, the ALJ developed a full factual record on the issue of alcohol dependency. A harmless error analysis is appropriate because the ALJ developed the record and considered the evidence, just not properly. See Schneiders v. Barnhart, No. C05-4092-MWB, 2006 WL 559247, at *13 (N.D.Iowa March 7, 2006)

(citing Fischer-Ross v. Barnhart, 431 F.3d 729, 733 (10th Cir.2005)).  The ALJ addressed the essential question in Brueggemann, which is whether Plaintiff would be disabled absent his alcohol dependency.  The ALJ's finding that there is no evidence to support a finding of disability absent alcohol dependency is supported by substantial evidence on the record as a whole.  Almost all of Plaintiff's treating physicians identified alcohol dependence as either a cause of illness or barrier from returning to health.  Additionally, the evidence showed that when sobriety was maintained, Plaintiff was a productive employee and did not display any health problems.  Plaintiff argues that this is a close case where, if the appropriate process were followed, the effects of alcohol dependency could not be factored out.  The record does not support such a conclusion.  Everything in the record, including Plaintiff's own testimony, points to the fact that alcohol dependency is the cause of his symptoms.

### B. The ALJ properly weighed the opinions of treating and examining physicians.

The Plaintiff argues that the ALJ did not rely upon the treating and examining physicians in determining the residual functional capacity, but rather relied upon his own lay opinions informed by the non-treating, not-examining physician, Dr. Stevens.  Plaintiff's claim is not supported by the record.  The ALJ considered Dr. Cardwell's and Dr. Moyer's opinions regarding physical limitations. (Tr. 33.) Furthermore, the residual functional capacity is consistent with their opinions.  The ALJ considered the opinion of Dr. Huber and did not give it significant weight because the ALJ believed that it contained conclusions based upon alcohol dependency.  Although, Dr. Huber's opinion was not given significant weight, the ALJ's decision is not inconsistent with it.  Dr. Huber stated that he had insufficient information to determine what impact the alcohol had upon the Plaintiff.  The ALJ considered the entire record, including opinions of treating and examining

physicians, which did provide sufficient information to segregate out the effects of the alcohol. The ALJ only relied upon the opinion of the neutral medical expert to interpret and extrapolate from the opinions of the treating physicians, not to substitute for their opinions.

### C.     The ALJ properly analyzed Plaintiff's credibility.

To assess Plaintiff's credibility, the ALJ had to consider all of the evidence, including prior work records, observations by third parties and doctors regarding daily activities, the duration, frequency, and intensity of pain, precipitating and aggravating factors, the dosage, effectiveness, and side effects of medication, and functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir.1984). The ALJ is required to make an express credibility determination explaining why he did not fully credit Plaintiff's complaints. See Ghant v. Bowen, 930 F.2d 633, 637 (8th Cir.1991). The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole. See Polaski, 739 F.2d at 1322. Where adequately explained and supported, credibility findings are for the ALJ to make. See Tang v. Apfel, 205 F.3d 1084, 1087 (8th Cir.2000).

Here, the ALJ referred to the Polaski considerations and cited inconsistencies in the record to support his finding that Plaintiff's complaints were not fully credible. The ALJ was not required to discuss methodically each Polaski consideration, so long as he acknowledged and examined those considerations before discounting Plaintiff's subjective complaints. See Brown v. Chater, 87 F.3d 963, 966 (8th Cir.1996). After careful review of the record, the Court concludes that the ALJ's reasoning was adequately explained. Additionally, the ALJ's finding that Plaintiff's subjective complaints were not fully credible is supported by the record as a whole.

### V. RECOMMENDATION

Based on the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Plaintiff's Motion for Summary Judgment [# 14] be **DENIED**; and

2. Defendant's Motion for Summary Judgment [# 19] be **GRANTED**.


DATED: November 30, 2006        s/ *Franklin L. Noel*
                                FRANKLIN L. NOEL
                                United States Magistrate Judge


Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **December 19, 2006**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.